DUANE MORRIS LLP
230 Park Avenue, Suite 1130
New York, NY 10169
Tel:  (212) 404-8755
Fax: (212) 818-9606
Email: MAieta@duanemorris.com

*Counsel to Ubiquiti Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
**In re:**

**PERASO TECHNOLOGIES INC.,**

        **Debtor in a Foreign Proceeding.**

-----------------------------------------------------------X

    **Chapter 15**

    **Case No. 20-11354 (SHL)**

    **RESPONSE AND OBJECTION OF UBIQUITI INC. TO EMERGENCY MOTION**
**OF ERNST & YOUNG INC. AS THE COURT-APPOINTED MONITOR REQUESTING**
<u>**PROVISIONAL RELIEF**</u>

DUANE MORRIS LLP
Mario Aieta
Timothy Brock
Charles J. Keely
Peggy S. Chen
230 Park Avenue, Suite 1130
New York, NY 10160
Tel:  (212) 404-8755
Fax: (212) 818-9606
E-mail: MAieta@duanemorris.com

*Attorneys for Ubiquiti Inc.*

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................1

ARGUMENT ......................................................................................................8

    A.  There Is No Genuine Emergency or Need for
       Provisional Relief............................................................................8

    B.  The Recognition Petition Has Been Filed in Bad Faith
       and Therefore in Contravention of the Public Policy of
       the United States. .......................................................................10

    C.  The Court Should Deny the Foreign Representative's
       Extraordinary Request to Extend the Automatic Stay to
       Protect Non-Debtors Including Ones Having No
       Current Affiliation with the Debtor. ..........................................12

CONCLUSION    ................................................................................16

3311326_1

## TABLE OF AUTHORITIES

### Cases

*In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96 (Bankr. S.D.N.Y. 2012)................15, 16

*In re Ebell Media, Inc.*, 462 Fed.Appx. 674 (9th Cir. 2011) ............................................11

*In re FPSDA I, LLC*, No. 10-75439, 2012 WL 6681794
(Bankr. E.D.N.Y. Dec. 21, 2012).........................................................................12, 13, 14

*In re QA3 Financial Corp.*, 2011 WL 2619572 (Bankr. Nebraska 2011).........................12

*In re Qimonda AG*, 482 B.R. 879 (Bankr. E.D. Va. 2012).........................................13, 16

*In re Syndicom Corp.*, 268 B.R. 26 (Bankr. S.D.N.Y. 2001) ............................................11

*In re Toft*, 453 B.R. 186 (Bankr. S.D.N.Y. 2011)..............................................................15

*In re Treco*, 240 F.3d 148 (2d Cir. 2001).........................................................................15

*In re Vitro, S.A.B. de C. V.,* 455 B.R. 571 (Bankr. N.D. Tex. 2011) ...........................13, 16

*Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282 (2nd Cir. 2003).................................12, 14, 15

### Statutes and Rules

11 U.S.C. § 1506............................................................................................................16

11 U.S.C. §1507(b) .........................................................................................................16

11 U.S.C. § 1509(b) ........................................................................................................15

11 U.S.C. § 1520(a)(1).....................................................................................................11

11 U.S.C. §1521(b) .........................................................................................................16

11 U.S.C. §1522..............................................................................................................16

### Other Authority

8 COLLIER ON BANKRUPTCY ¶ 1509.02...................................................................16

ii

Ubiquiti Inc. respectfully submits this response to *Emergency Motion for Provisional Relief* [20-11354 Doc 3] filed by Ernst & Young Inc. (the "**Monitor**") acting as the authorized foreign representative of Peraso Technologies Inc. ("**Peraso**" or "**Debtor**"). The motion should be denied for the following reasons:

(1) There is no genuine emergency in this case, which essentially is a two-party dispute in which there is no current or foreseeable need for emergency relief.

(2) This Chapter 15 recognition proceeding, just as with the Canadian plenary proceeding, has been unnecessarily and improvidently filed, manifestly in bad faith, and therefore in contravention of the public policy of the United States.

(3) The improper request to extend the automatic stay to protect non-debtors (including ones having no current affiliation with the Debtor) is contrary to United States bankruptcy law and the public policy of the United States, and notably is neither justified nor explained in the Initial Order of the Ontario Court dated June 3, 2020, on which the Recognition Petition and Emergency Motion are based.

## BACKGROUND

Ubiquiti Inc. is a publicly traded company (NYSE: UI) that develops and markets professional networking hardware and software that is used to create networking infrastructure in over 200 countries and territories around the world.  Ubiquiti Inc. has a wholly-owned Canadian subsidiary (collectively and interchangeably, both Ubiquiti Inc. and its subsidiary and hereinafter referred to as "Ubiquiti") Peraso is a venture funded private semiconductor company specializing in the development of integrated circuits for the 60 GHz wireless marketplace. The facts relevant to the dispute between Ubiquiti and Peraso are alleged in detail in the First Amended Complaint in *UBIQUITI INC. v. PERASO TECHNOLOGIES INC., et al.*, U.S.D.C. S.D.N.Y. 20 Civ. 1312

1

(LTS) (GWG), which is attached as Exhibit B to the Affidavit of Ron Glibbery dated June 2, 2020 ("Glibbery Aff."), submitted by Peraso in support of its application for the Initial Order of the Ontario Superior Court which is the subject of the instant Emergency Motion.[1]  Additional facts relevant to Ubiquiti's Response to the Emergency Motion are set forth in the Declaration of Hartley Nisenbaum dated June 8, 2020 ("Nisenbaum Decl."), submitted herewith.

On December 21, 2018, Ubiquiti and Peraso entered into a License and Development Agreement (the "**License Agreement**"). Pursuant to the License Agreement, Peraso agreed to develop, **_exclusively_** _for Ubiquiti,_ certain chipsets. The License Agreement, _inter alia_: sets forth in detail the intellectual property rights of Peraso and Ubiquiti with respect to the development of chipsets exclusively for Ubiquiti; specifies how much Ubiquiti will pay Peraso for exclusive access to the chipsets; provides that the terms of the License Agreement will be governed by the law of New York; and expressly binds the parties to resolve any dispute between them regarding the License Agreement in New York Courts. Nisenbaum Decl. ¶ 3; Glibbery Aff. Ex. B ¶ 12.

Simultaneously with entry into the License Agreement, and in consideration for the exclusive license granted by Peraso to Ubiquiti in the License Agreement, Ubiquiti and Peraso also entered into a Class C Series 1 Convertible Preferred Share Subscription Agreement (the "**Subscription Agreement**"), whereby Ubiquiti agreed to make certain equity investments in Peraso if and when certain development "milestones" were achieved by Peraso. Glibbery Aff. Ex. B ¶ 21.

To induce Ubiquiti to enter into the Subscription Agreement and make equity investments into Peraso, Peraso and the venture funds that were preferred shareholders in Peraso

---

[1] The Glibbery Aff. is Exhibit a to the Declaration of Ken Coleman in Support of Verified Petition for Recognition of Foreign Proceeding and Emergency Motion for Provisional Relief, 20-11354 Doc 5 Filed 06/03/20.

(the "**Venture Funds**"), agreed to amend and restate the Peraso Shareholders Agreement and to cause Peraso to enter into the License Agreement and collateral documents. Glibbery Aff. Ex. B ¶ 21. The amended and restated Shareholders Agreement gave Ubiquiti the right to have an observer attend all meetings of the Peraso board and any committees thereof and the right to concurrently receive all written information provided to the board or any committee thereof. Glibbery Aff. Ex. A.

The amended and restated Shareholders Agreement also provided that any person or entity obtaining a controlling interest in Peraso would be required to assume Peraso's obligations and rights under the License Agreement, including the obligation to produce the chipsets exclusively for Ubiquiti. The Venture Funds expressly consented to the Subscription Agreement and collateral documents, including the License Agreement, by entering into the Shareholders Agreement. Glibbery Aff. Ex. A.

The License Agreement obligated Peraso to complete the development of the chipsets exclusively licensed to Ubiquiti and to "demonstrate to the reasonable satisfaction" of Ubiquiti that each of three defined development "Milestones" had been completed on or before a specified completion date for each.  The first Milestone had been completed at the time that the parties entered into the License Agreement. Peraso was required to give Ubiquiti written notice when it achieved each of the second and third Milestones (respectively, the "**Second Tranche Development Milestones**" and the "**Third Tranche Development Milestones**").  Nisenbaum Decl. ¶ 5.

Peraso did not meet the Second Tranche Development Milestones.  Nisenbaum Decl. ¶ 6. In light of the fact that it did not meet Second Tranche Development Milestones, Peraso did not become entitled to receive the equity investment from Ubiquiti that would have been provided

had the milestone been timely met.  Consequently, Peraso never demanded the Second Tranche Development Milestone equity investment. Nisenbaum Decl. ¶ 6.

Peraso also failed to achieve the Third Tranche Development Milestones by the specified October 31, 2019 deadline.  The deliverables provided to Ubiquiti by Peraso on or before October 31, 2019, whether considered individually or in the aggregate, were not adequate to demonstrate to the reasonable satisfaction of Ubiquiti that Peraso had achieved the Third Tranche Development Milestones. Ubiquiti repeatedly provided Peraso with notice of the foregoing, and Peraso repeatedly acknowledged the shortcomings identified by Ubiquiti and repeatedly attempted to rectify those shortcomings. In fact, "full characterization data" regarding the chipsets (an essential pre-requisite to Ubiquiti's evaluation of whether the milestones had been achieved) was not provided to Ubiquiti by Peraso until November 16, 2019, more than two weeks after the relevant deadline. Nisenbaum Decl. ¶¶ 8-10.

By the Fall of 2019, Peraso had accumulated a large sum of accrued and unpaid dividends owed to the Venture Funds. In November 2019, Peraso and/ or one or more members of its board of directors entered into a relationship with a broker for the purpose of seeking a sale of Peraso to a third party; that broker was unable to generate any interest in the purchase of Peraso other than a potential sale of Peraso to a US-based hardware company. The terms of the potential sale of Peraso to a US-based hardware company would generate sufficient proceeds to provide compensation to the Venture Funds for some or all of the accrued and unpaid dividends owed to the Venture Funds. Glibbery Aff. Ex. B ¶¶ 33-35.

In December 2019, McLean, Peraso's then-CEO, held options to purchase millions of common shares in Peraso vesting over a four-year period beginning in February 2019.  If Peraso were to be acquired by the U.S.-based hardware company, half of McLean's options would

immediately vest and be fully exercisable and the other half would vest in equal monthly installments over a one-year period. Each of the Venture Funds' designees on the Peraso board of directors in December 2019 -- Whitaker, Abbott, Adderley, Imed Zine, and Riadh Zine (collectively the "Individual Defendants") -- through their interests in the preferred shares of Peraso and in the Venture Funds, would earn a substantial personal financial reward if Peraso were to be acquired by the U.S.-based hardware company. Glibbery Aff. Ex. B ¶ 36.

McLean and the Individual Defendants learned that the U.S.-based hardware company was not interested in purchasing Peraso if Ubiquiti continued to possess exclusive rights to certain chips being developed by Peraso as provided in the License Agreement. On or before November 1, 2019, Peraso stopped providing Ubiquiti's subsidiary with notice of board and committee meetings and stopped providing the written information that was provided to the board and committees of the board. McLean and the Venture Funds' designees decided to attempt to terminate the License Agreement in order to increase the likelihood that Peraso would be acquired by the U.S.-based hardware company, even though Ubiquiti was not in breach of its obligations under the License Agreement, there was no legal basis for terminating the License Agreement, and terminating the License Agreement was not in the best interests of Peraso and its shareholders other than McLean and the Venture Funds. Glibbery Aff. Ex. B ¶¶ 44-45.

On December 11, 2019, counsel acting on behalf of Peraso gave notice to Ubiquiti that Ubiquiti was allegedly in default of a material obligation under the License Agreement (the "**Default Notice**"). Specifically, the Default Notice claimed that Peraso had given Ubiquiti written notice of its achievement of the Third Tranche Development Milestones on October 31, 2019, and that Ubiquiti failed to give Peraso written notice of rejection or acceptance of Peraso's alleged achievement of the Third Tranche Development Milestones within 30 days of October

31, 2019.  The Default Notice does not identify the document or documents that allegedly constitute the October 31, 2019, notice to Ubiquiti that Peraso had achieved the Third Tranche Development Milestones.  This is not surprising, since as of December 11, 2019, Peraso had not provided Ubiquiti with notice sufficient to "demonstrate to the reasonable satisfaction of" Ubiquiti that Peraso had achieved the Third Tranche Development Milestones by or before October 31, 2019. Nisenbaum Decl. ¶¶ 11-12.

The License Agreement provides that a party receiving a notice of default has 30 days to respond to the noticed default. On December 11, 2019, shortly before Peraso's counsel issued the Notice of Default and in furtherance of the plan to wrongfully terminate the License Agreement, McLean advised Ubiquiti that Peraso would issue the Default Notice but the Default Notice did not require a response because the Third Tranche Development Milestones had not been achieved prior to October 31, 2019.   Peraso's counsel issued the Default Notice shortly after McLean advised Ubiquiti that the Default Notice did not require a response. Nisenbaum Decl. ¶ 13.

On January 16, 2020, Peraso purported to terminate the License Agreement based on Ubiquiti's alleged failure to remedy the alleged material breach set forth in the Notice of Default. The notice of termination was provided by Peraso to the US-based hardware company in an effort to facilitate a potential sale of Peraso. However, Peraso made it clear to Ubiquiti that the so-called "termination" was nothing more than a ruse to force the renegotiation of the License Agreement: "…[W]e want to continue working with Ubiquiti in a joint and mutually beneficial manner. We don't want the termination of this license agreement to impact that relationship, and are willing to continue to work with you to make sure that any concerns that you have arising from the termination of the license agreement are addressed." Nisenbaum Decl. ¶ 14.

On February 14, 2020, Ubiquiti filed an action in the United States District Court for the Southern District of New York seeking a declaratory judgment that the License Agreement remained in full force and effect (the "**License Litigation**"). Glibbery Aff. Ex. B. Ubiquiti is Peraso's biggest customer and by far Peraso's largest source of revenue. Glibbery Aff. ¶ 24. Through the License Litigation, Ubiquiti seeks a declaration that the License Agreement is still in effect, thereby preserving Peraso's most important customer relationship and most important source of revenue. Nisenbaum Decl. ¶ 15.

The U.S.-based hardware company lost interest in Peraso by the end of February. With no sale of the company in sight and having terminated Peraso's most important contract, three of Peraso's board members (McLean, Abbott and Whitaker) resigned at the end of February 2020 to avoid being held responsible for their mismanagement, leaving a four person board dominated by the designees of one of the Venture Funds, and Peraso's largest shareholder, an entity called Roadmap Capital, Inc. ("Roadmap").  Glibbery Aff. ¶ 53. Peraso's board then approved a series of transactions that destroyed the preferred status of all of Peraso's remaining preferred shareholders (including Ubiquiti) and gave Roadmap preferred and **secured** interests in Peraso in exchange for interim financing.  Glibbery Aff. ¶¶ 52-59.  Roadmap's takeover of Peraso was nearly complete. Only one obstacle remained: the License Agreement.

On June 2, 2020, Peraso filed its application in Ontario Superior Court of Justice seeking protection under the *Companies' Creditors Arrangements Act* R.S.C. 1985, c. C-36, to "resolve the claims asserted against it in the License Litigation" now pending in the United States District Court for the Southern District of New York.  The Ontario Superior Court entered its Preliminary Order on June 3, 2020, staying any action against Peraso and against its current and former officers and directors in any proceeding in Canada, and appointing Ernst & Young Inc. as

7

Monitor and Foreign Representative, specifically authorizing the filing of a Chapter 15 petition

in United States Bankruptcy Court.  On June 3, 2020, the Monitor filed its petition for Chapter

15 recognition seeking to enforce the Preliminary Order in the United States on an emergency

basis, even though Peraso identifies no U.S. creditors in either its application to the Ontario

Superior Court or in its petition for recognition before this Court.

In sum, this Chapter 15 application is nothing more than an attempt to litigate what

essentially is a two-party dispute over a License Agreement in a forum that Peraso now believes

will be more receptive to its position. Since there is no imminent event that would threaten the

assets of Peraso or the interests of its creditors, there is no emergency that would justify the

granting of Section 1519 provisional relief on an emergency basis.  Since the only U.S.-based

interest of Peraso that has been identified in the petition is the License Litigation and the plaintiff

in the that litigation is attempting to reaffirm the license that Peraso admits is its primary asset

and single most important source of revenue, the stay sought by the Monitor is not for the benefit

of Peraso's creditors. Since the Preliminary Order extends debtor protection to non-debtors

without justification, it is contrary to U.S. bankruptcy law and should not be enforced in the U.S.

And finally, since the Preliminary Order extends debtor protection to non-debtor individuals who

are no longer affiliated with Peraso, it flagrantly disregards the policy embodied in U.S.

bankruptcy law and should not be enforced as to those individuals.

## **ARGUMENT**

## I.    **There Is No Genuine Emergency or Need for Provisional Relief**

The Preliminary Order of the Ontario Superior Court stays proceedings in Canada until

June 13, 2020.  A hearing before the Ontario Superior Court is scheduled for June 12, 2020.

There is no reason why this Court should take any action on the Monitor's Application until after

the June 12 hearing, when the Ontario Superior Court will have the opportunity to more fully

explore the justifications for the stay order that the Monitor seeks to implement in the United

States.

The only justifications advanced by the Monitor for its Emergency Application before

this Court is the fact that certain deadlines in the License Litigation are approaching and that

Peraso's efforts to respond to all of its pending litigations are a "significant strain" on Peraso's

resources. That "emergency" is illusory. The approaching deadlines in the License Litigation

are ministerial at worst. "i) Peraso . . . must respond to Ubiquiti's second amended complaint by

June 12, 2020; (ii) initial document requests and initial interrogatories shall be served by June

24, 2020; and (iii) the deadline for joining parties or filing amended pleadings is June 30, 2020."

Coleman Decl. ¶ 7. Peraso has not sought to adjourn any of these deadlines in the License

Litigation. Nisenbaum Decl. ¶ 17. Had it done so, Ubiquiti would have readily consented,

obviating the need for this "emergency" application.[2] Moreover, Ubiquiti would still so consent,

as the Debtor and the Monitor are well aware.

In fact, when Ubiquiti became aware, through this Emergency Application, that the

License Litigation deadlines supposedly posed a challenge to Peraso, Ubiquiti offered to make a

time-limited adjournment of all discovery obligations facing the non-debtor defendants, and

consent to the entry of the proposed Section 1519 Order with respect to Peraso (and only

Peraso), coupled with a full reservation of all of Ubiquiti's rights to object at or before the

Recognition Hearing to all the relief the Monitor is seeking before this Court. Through counsel,

---

[2] Peraso has already answered the First Amended Complaint in the License Litigation. Case 1:20-cv-01312-LTS-GWG Document 26 Filed 03/27/20. Following District Court Judge Swain's Individual Practices, the Second Amended Complaint addresses issues raised by the individual defendants in a motion to dismiss. Case 1:20-cv-01312-LTS-GWG Document 40 Filed 05/14/20. The allegations against Peraso remain essentially unchanged.

the Monitor has rejected that offer without explanation, seemingly bowing to the interests of the

non-debtor individuals. Nisenbaum Decl. ¶ 18.

Accordingly, the Monitor's Emergency Application should be denied because Peraso

faces no emergency in the United States.

## II.    The Recognition Petition Has Been Filed in Bad Faith and Therefore in Contravention of the Public Policy of the United States.

Peraso makes no effort to disguise the sole and improper purpose of this Chapter 15

petition: to move the License Litigation from the Southern District of New York – the forum in

which Peraso expressly agreed to adjudicate any issues arising under the License Agreement – to

Ontario Superior Court.  Neither the Emergency Motion for Provisional Relief nor the

voluminous pages attached to the Coleman Declaration in Support of the Petition for

Recognition point to any other substantive asset, liability, debt, duty, right or obligation of

Peraso in the United States.[3]  If this Court were to enter the stay requested by the Monitor, there

will be only one perverse consequence: the delay or derailment of the litigation that is

specifically directed to resolving the dispute that Peraso's CEO identifies as most important issue

Peraso now faces.  This consequence is a particularly egregious one because Ubiquiti, Peraso's

most important customer, seeks in the declaratory judgment cause of action in the License

Litigation, to reaffirm the License Agreement that is Peraso's most important asset and source of

revenue.

---

[3] Peraso's CEO admits that Peraso has essentially no interests or assets in the United States other than the License Litigation. Glibbery Aff. ¶¶ 111, 113 ("Peraso's primary connection to the United States is the Licence Litigation. . . .Other than the Licence Litigation, Peraso's connection to the United States is largely limited to (i) its Vice President of Finance, who is a United States resident and a full-time employee of Peraso; (ii) two United States-based contractors; and (iii) approximately $7,500 held as a retainer at Hodgson Russ LLP, US counsel to Peraso. Peraso does not maintain an office in the United States. Substantively the vast majority of Peraso's business operations, employees and assets are located in Ontario."

Bankruptcy courts have long recognized that the stay power of the bankruptcy courts is not properly invoked to give an unfair advantage to one side in a two-party dispute. There can be no doubt that a petition has been filed in bad faith where, as here, the case involves solely a two-party dispute; and (2) the only possible effect of the bankruptcy filing is to stop a proceeding pending in another court. *In re Ebell Media, Inc.*, 462 Fed.Appx. 674 (9th Cir. 2011); *In re Syndicom Corp.*, 268 B.R. 26 (Bankr. S.D.N.Y. 2001)(where the interests of creditors are not served to any material extent, "the Court is also called upon to consider whether bankruptcy courts should be used to facilitate the private agendas of litigants in two-party disputes").

The facts in *Syndicom* are closely analogous to those presented by the Monitor's application for emergency relief and a stay. In *Syndicom*, the debtor had a single asset: an apartment lease. Here, Peraso has only a single asset that will be affected by a stay: a license interest subject to adjudication in New York under New York law. In *Sydicom* the sole purpose of the stay was to shift the resolution of the dispute over ownership of the leasehold from New York state courts to bankruptcy court. Here, the sole purpose of the stay, as admitted by Peraso's CEO, is to move the dispute over intellectual property rights from New York federal court to bankruptcy court in Canada. In *Syndicom*, the debtor sought to obtain the leasehold interest so that it could "flip" the apartment for a profit. Here, Peraso admits that it seeks to terminate the License Agreement so that it can avoid the "exclusivity" provision and sell to other customers those chips to which Ubiquiti has exclusive rights. Here, as in *Syndicom*, the requested stay will not directly protect any creditors of the debtor. Therefore, there is a substantial basis to question whether or not the recognition proceeding is brought in bad faith. For that reason, the request for emergency relief should be denied.

11

Furthermore, the Monitor's stated objective for seeking to stay the License Litigation – to avoid the "significant strain" of such litigation – while not be achieved by such a stay.  At best, the "strain" will simply be shifted to a Canadian litigation, where additional resources will have be to be spent to obtain jurisdiction over Ubiquiti (if possible) and adjudicate a dispute under New York law. *See In re QA3 Financial Corp.*, 2011 WL 2619572 (Bankr. Nebraska 2011) (lifting stay to allow declaratory judgment proceeding on contract governed by New York law to continue in pre-petition litigation in New York).

III.    **The Court Should Deny the Foreign Representative's Extraordinary Request to Extend the Automatic Stay to Protect Non-Debtors Including Ones Having No Current Affiliation with the Debtor.**

The Monitor's extraordinary request to stay Ubiquiti's claims in the License Litigation against Peraso's current and former directors and officers must be denied.   Even assuming, arguendo, that this Court were to grant Chapter 15 recognition, Section 1520(a)(1) would make the automatic bankruptcy stay applicable only "with respect to the debtor and property of the debtor."  11 U.S.C. § 1520(a)(1).  It is a fundamental tenet of U.S bankruptcy law that the automatic stay "only protects the debtor and does not extend injunctive coverage to non-debtor third parties." *In re FPSDA I, LLC*, No. 10-75439, 2012 WL 6681794, at *7 (Bankr. E.D.N.Y. Dec. 21, 2012) (denying request to stay litigation against the debtor's directors and officers), cited in Foreign Rep. Br. at ¶ 24.  Enjoining litigation against a non-debtor is "extraordinary relief" reserved for "unusual circumstances" when the "claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate."  *Id*. (quoting *Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 287–288 (2nd Cir. 2003)).  The movant must present clear and convincing evidence of "an actual threat" to the debtors' restructuring efforts. *Id* at *8.  The movant also must establish all requirements for injunctive relief, including "a sufficient

12

probability that it will succeed in the underlying litigation," "irreparable injury if a preliminary

injunction is not granted," and that "the public interest would not be disserved by the issuance of

the preliminary injunction." *Id*. at *6.

This heavy burden is no lighter in a Chapter 15 case. *In re Qimonda AG*, 482 B.R. 879,

893-96 (Bankr. E.D. Va. 2012) (applying the preliminary injunction standard to a Foreign

Representative's request to extend the stay to litigation against a non-debtor and denying relief

based on the failure to show irreparable injury and because the public interest would be disserved

by the stay) (quoting *In re Vitro, S.A.B. de C. V.,* 455 B.R. 571, 580–83 (Bankr. N.D. Tex. 2011)

("Extending the automatic stay or issuing an injunction for non-debtors contravenes a basic and

compelling principle of federal bankruptcy law. Like the rest of the Code, Chapter 15 focuses on

protecting the debtors, not [a] non-debtor[.] . . . [T]he Foreign Administrator here is seeking to

accomplish something in Chapter 15 that U.S. bankruptcy law ordinarily would not allow absent

unusual circumstances.")

Here, the Monitor has not come close to meeting this heavy burden.  Peraso's potential

indemnification obligation to its directors and officers is hardly an "unusual circumstance."  It is

present in virtually every litigation against a corporate debtor's principals.  Further, any

obligation to indemnify will not have "an immediate adverse economic consequence" on

Peraso's estate.  Peraso maintains D&O insurance providing C$2 million in coverage.  Glibbery

Aff. ¶ 102.  .)  This insurance coverage certainly is adequate to fund the directors' and officers'

defense costs for a considerable period of time.  There is no risk of any immediate impact on the

estate.   Further, even if this coverage ultimately proves insufficient to cover their liability, the

Monitor has "cited no legal authority, of any kind, to support the assertion that [the directors' and

officers' indemnification claims] would constitute administrative priority claims" as opposed to

"mere general, unsecured claims." *FPSDA I, LLC*, 2012 WL 6681794, at *13. Thus, there is no basis to conclude that the indemnification claims would have an immediate adverse effect on Peraso's estate.[4]

The Monitor also contends that an unfavorable judgment against Peraso's directors and officers "could give rise to collateral estoppel arguments that might be utilized against" Peraso's estate. (Monitor Br. [ECF Doc 4] at ¶ 25.) This potential concern – which, again, is present in almost every case – does not "pose the risk of immediate, adverse consequences to the Debtor's estate[s], at least in more than a theoretical or speculative sense." *FPSDA I, LLC*, 2012 WL 6681794 at *15. The Second Circuit has rejected application of the stay to a non-debtor "solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision," because it would lead to a "vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants." *Queenie*, 321 F.3d at 288.

The Monitor's remaining argument that "[a]llowing the litigation to continue would be a distraction to Peraso's current officers and directors" also rings hollow (and it obviously does not pertain to McLean, Abbott and Whitaker, former officers and directors with no current affiliation with the Debtor). Once again, this is not an unusual circumstance but applies in every case. The Monitor presents no evidence of any actual distraction and does not even argue that the License Litigation is likely to place significant demands on the time of any individual director and officer in the near term. The litigation is at the pleading stage. The only upcoming deadline is for the

---

[4] Notably, the Initial Order grants a priority "Director's Charge" against the property of the estate for obligations and liabilities that Peraso's current directors and officers may incur as directors and officers only "after the commencement" of the Canadian proceeding, and it excludes liability for "willful misconduct." Initial Order ¶ 16. The License Litigation was filed before the Canadian proceeding and alleges willful misconduct predating it. The Director's Charge also is applicable only after exhaustion of applicable insurance coverage.

14

director and officer defendants to answer or move to dismiss the complaint, which is an entirely

lawyer-driven exercise.[5]  Further, as the Monitor concedes, this distraction argument does not

apply as to the former directors and officers.

Finally, the Monitor's contention that the Court should enjoin the License Litigation

against the director and officer defendants, merely out of comity to the Ontario Court's stay

order, reflects a fundamental misunderstanding of Chapter 15.   Upon recognition, Section

1509(b) requires a U.S. court to "grant comity or cooperation to the foreign representative." 11

U.S.C. § 1509(b). "While this provision mandates courtesy and respect for the foreign

proceeding, consistent with the statement of purpose of chapter 15 and its international origin, it

does not mandate relief. The foreign representative must still make a case that the relief it seeks

is warranted." *In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 109 (Bankr. S.D.N.Y. 2012)

(quoting 8 COLLIER ON BANKRUPTCY ¶ 1509.02.).  "Granting comity to a *foreign*

*representative* by providing access to courts in the United States is very different from

granting *the request* by the foreign representative to extend comity to a foreign law, court order

or judgment." *In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. at 110 (emphasis in original).

Contrary to its arguments, the Monitor "cannot cause the [Bankruptcy] Court to apply the laws of

[the foreign country] in proceedings in this country simply by making an impassioned appeal to

comity." *In re Toft*, 453 B.R. 186, 191 (Bankr. S.D.N.Y. 2011); *In re Treco*, 240 F.3d 148, 157

(2d Cir. 2001) ("The principle of comity has never meant categorical deference to foreign

proceedings. It is implicit in the concept that deference should be withheld where appropriate to

---

[5]    Ubiquiti even has agreed to adjourn the D&O defendants' response deadline beyond the next hearing
date of June 12 at which time the Ontario Court will decide whether, and to what extent, to extend its stay order
beyond its current June 13 expiration date.

15

avoid the violation of the laws, public policies, or rights of the citizens of the United States.").

There is no urgency here that warrants granting extraordinary injunctive relief pre-recognition. Moreover, post-recognition relief pursuant to Section 1521 or 1507 is discretionary and may only be granted upon a showing that the interests of creditors would be sufficiently protected, which may include the giving of security or filing of a bond.  11 U.S.C. §§1507(b), 1521(b), 1522.  *Cf. In re Cozumel Caribe*, 482 B.R. at 111 (staying claims against a non-debtor and finding the plaintiff's interests protected only to the extent that funds in an U.S. account that were subject to court-ordered protective measures but not staying litigation as to funds not subject to those measures).  Here, the Monitor points to no measures that secure or protect Ubiquiti's interests against the directors and officers during the requested stay.

Finally, Section 1506 authorizes the Bankruptcy Court to refuse relief that "would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.  Courts have held that "[e]xtending the automatic stay or issuing an injunction for non-debtors contravenes a basic and compelling principle of federal bankruptcy law" and should not be allowed in Chapter 15 "absent unusual circumstances."  *In re Qimonda AG*, 482 B.R. at 897-96, *quoting In re Vitro,* 455 B.R. at 580-83.   Here, the Monitor has failed to show any unusual circumstances that warrant the extraordinary relief of extending the automatic stay to non-debtors and enjoining the License Litigation against Peraso's current and former directors and officers.

## CONCLUSION

As demonstrated above, the Monitor has identified no emergency that should compel this Court to recognize the Ontario Superior Court's Preliminary Order prior to that court's consideration of the Monitor's request for a stay at the hearing to be held in Ontario on June 12, 2020. Furthermore, the stay sought by the Monitor from this Court will serve no function other

than to shift the License Litigation from the Southern District of New York to a forum that has

no expertise in the law that must be applied to the License Agreement. Finally, the stay sought

by the Monitor conflicts with U.S. bankruptcy law to the extent that it extends to non-debtors.

Therefore, the Monitor's Emergency Motion for preliminary relief should be denied.

Dated:  New York, New York
        June 8, 2020


                                    Respectfully submitted,

                                    By: */s/ Mario Aieta*_____
                                    Mario Aieta
                                    Timothy Brock
                                    Charles J. Keely
                                    Peggy S. Chen
                                    DUANE MORRIS LLP
                                    230 Park Avenue, Suite 1130
                                    New York, NY 10160
                                    Tel:  (212) 404-8755
                                    Fax: (212) 818-9606
                                    E-mail: MAieta@duanemorris.com

                                    *Attorneys for Ubiquiti Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Mario Aieta, do hereby certify that, on this 8th day of June 2020, I caused a true and accurate copy of the *RESPONSE AND OBJECTION OF UBIQUITI INC. TO EMERGENCY MOTION OF ERNST & YOUNG INC. AS THE COURT-APPOINTED MONITOR REQUESTING PROVISIONAL RELIEF* to be served on all parties registered to receive electronic notice *via* this Court's CM/ECF system.

*/s/ Mario Aieta*
Mario Aieta
