Ken Coleman
Josh Neifeld
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 610-6300
Facsimile:  (212) 610-6399

*Counsel to Ernst & Young Inc., as the Monitor
and Foreign Representative of Peraso Technologies Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* <br><br> PERASO TECHNOLOGIES INC.,[1] <br><br> Debtor in a Foreign Proceeding. | Chapter 15 <br><br> Case No. 20-11354 (SHL) |

**NOTICE OF FILING OF THE EIGHTH REPORT
OF THE MONITOR IN THE CANADIAN PROCEEDING**

      **PLEASE TAKE NOTICE** that Ernst & Young Inc. is the court-appointed monitor (the "**Monitor**") and authorized foreign representative of Peraso Technologies Inc. ("**Peraso**") in a proceeding (the "**Canadian Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, (as amended, the "**CCAA**"), pending before the Ontario Superior Court of Justice, Commercial List (the "**Ontario Court**").

      **PLEASE TAKE FURTHER NOTICE** that on October 1, 2020, the Monitor served the *Eighth Report of the Monitor (Redacted Version)* in the Canadian Proceeding, a copy of which is annexed hereto as Exhibit A, providing the Ontario Court with certain information regarding, among other things, Peraso's operations and activities, its request to seal its recent cash flow forecast, its request to extend the Stay Period under the Ontario Court's Amended and Restated Initial Order to October 30, 2020, and the status of a potential settlement with Ubiquiti Inc.

*[Remainder of Page Intentionally Left Blank]*

---

[1]     The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, for Peraso Technologies Inc. are 8747.

| | |
|---|---|
| Dated: New York, New York<br>October 2, 2020 | **ALLEN & OVERY LLP**<br><br>*/s/ Ken Coleman*<br>Ken Coleman<br>Josh Neifeld<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone (212) 610-6300<br>Facsimile (212) 610-6399<br>ken.coleman@allenovery.com<br>josh.neifeld@allenovery.com<br><br>*Counsel to Ernst & Young Inc., as the Monitor and Foreign Representative of Peraso Technologies Inc.* |

2

## **EXHIBIT A**

*Eighth Report of the Monitor*
*(Redacted Version)*

**Court File No.: CV-20-00642010-00CL**

# ONTARIO

## SUPERIOR COURT OF JUSTICE

### (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF PERASO TECHNOLOGIES INC.**

Applicant

*REDACTED VERSION*
**EIGHTH REPORT OF THE MONITOR**

October 1, 2020

**Thornton Grout Finnigan LLP**
3200 – 100 Wellington Street West
TD West Tower, Toronto-Dominion Centre
Toronto, ON M5K 1K7

**D.J. Miller** (LSO# 34393P)
Email: djmiller@tgf.ca

**Andrew Hanrahan** (LSO# 78003K)
Email: ahanrahan@tgf.ca

Tel:    416-304-1616
Fax:   416-304-1313

Lawyers for the Monitor, Ernst & Young Inc.

**Court File No.: CV-20-00642010-00CL**

# ONTARIO

## SUPERIOR COURT OF JUSTICE

### (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF PERASO TECHNOLOGIES INC.**

Applicant

### EIGHTH REPORT OF THE MONITOR

**INTRODUCTION**

1. On June 3, 2020, Peraso Technologies Inc. ("**Peraso**", the "**Company**" or the "**Applicant**") applied for and was granted protection from the Ontario Superior Court of Justice (Commercial List) (the "**Court**") under the *Companies' Creditors Arrangement Act* R.S.C. 1985, c. C-36, as amended ("**CCAA**"), pursuant to an Order of Mr. Justice Hainey dated June 3, 2020 (the "**Initial Order**"). Ernst & Young Inc. ("**EY**" or the "**Monitor**") was appointed Monitor of the Applicant in this CCAA proceeding. The Initial Order provided a stay of proceedings until June 13, 2020 (the "**Stay Period**") with respect to the Applicant and certain current and former directors of the Applicant.

2. On June 12, 2020, the Court heard a motion brought by the Applicant and, among other things, amended and restated the Initial Order (the "**Amended and Restated Initial Order**") and extended the Stay Period to July 3, 2020.

3. On July 2, 2020, the Court heard a motion brought by the Applicant and approved a debtor-in-possession credit agreement and extended the Stay Period to August 14, 2020.

1

4. On August 11, 2020, the Court heard a motion brought by the Applicant and, among other things, extended the Stay Period to August 28, 2020. On August 28, 2020, the Court heard a motion brought by the Applicant and, among other things, extended the Stay Period to September 4, 2020.

5. On September 2, 2020, the Court heard a motion brought by the Applicant and approved an additional debtor-in-possession credit agreement and further extended the Stay Period to October 2, 2020.

**PURPOSE**

6. The purpose of this eighth report of the Monitor (the "**Eighth Report**") is to provide information to this Court about:

    a) the Applicant's operations and activities since the Sixth Report of the Monitor dated September 2, 2020 (the "**Sixth Report**");

    b) the receipts and disbursements of the Applicant from August 29, 2020 to September 18, 2020 (the "**Reporting Period**");

    c) the Applicant's revised cash flow forecast for the period from September 19, 2020 to October 30, 2020 (the "**Cash Flow Forecast**");

    d) the Applicant's request to seal the Cash Flow Forecast, the unredacted October 1 Glibbery Affidavit (as defined below) and the unredacted Eighth Report (collectively, the "**Confidential Documents**"); and

    e) the Applicant's request for an order that the Stay Period be extended to October 30, 2020.

**TERMS OF REFERENCE**

7. Capitalized terms used but not defined in this Eighth Report are defined in the Affidavit of Ronald Glibbery affirmed in connection with the Company's motion (the "**October 1 Glibbery Affidavit**").

8. In preparing this Eighth Report and making the comments herein, the Monitor has been provided with, and has relied upon, unaudited financial information, books,

2

records and financial information prepared by the Applicant, discussions with management of the Applicant ("**Management**"), and information from other third party sources (collectively, the "**Information**"). Except as described in this Report in respect of the Cash Flow Forecast:

a) the Monitor has reviewed the Information for reasonableness, internal consistency and use in the context in which it was provided. However, the Monitor has not audited or otherwise attempted to verify the accuracy or completeness of such information in a manner that would wholly or partially comply with Generally Accepted Assurance Standards ("**GAAS**") pursuant to the *Chartered Professional Accountants Canada Handbook* and, accordingly, the Monitor expresses no opinion or other form of assurance contemplated under GAAS in respect of the Information; and

b) some of the information referred to in this Eighth Report consists of forecasts and projections. An examination or review of the financial forecast and projections, as outlined in the *Chartered Professional Accountants Canada Handbook*, has not been performed.

9. Future oriented financial information referred to in this Eighth Report was prepared based on Management's estimates and assumptions. Readers are cautioned that since projections are based upon assumptions about future events and conditions that are not ascertainable, the actual results will vary from the projections, even if the assumptions materialize, and the variations could be significant.

10. Unless otherwise indicated, the Monitor's understanding of factual matters expressed in this Report concerning the Applicant and its business is based on the Information, and not independent factual determinations made by the Monitor.

11. Unless otherwise stated, all monetary amounts contained herein are expressed in United States dollars.

3

**OVERVIEW OF THE APPLICANT**

12. This Eighth Report should be read in conjunction with the October 1 Glibbery Affidavit for additional background with respect to the Applicant.

13. The Applicant's products are primarily used in wireless technology that operates on the 60 gigahertz ("**GHz**") band and are being designed to power the next generation of high-speed wireless networks.

14. While Peraso currently generates most of its revenue by providing engineering services, it anticipates its future revenue will be primarily derived from two primary product lines: (i) software and (ii) chipsets. "Software" refers to the programs and technology used by computers, but does not consist of a physical item. "Chipsets" are physical products, made up of electrical components, at least one radio, one baseband, and typically an antenna. Peraso primarily manufactures and distributes two chipsets:

    a) **"W" Series Chipsets** – these chipsets operate as an alternative to wired technology in consumer electronic devices; and

    b) **"X" Series Chipsets** – these chipsets work with high performance wireless applications and can create wireless networks with a range of more than 1.5 kilometres.

15. Peraso is in the process of leveraging its expertise with the 60 GHz wireless technology to enter the highly publicized 5G market.

16. As of September 30, 2020, the Applicant employed approximately 63 individuals and contractors in Canada and the United States.

**UPDATE ON THE APPLICANT'S ACTIVITIES**

17. Since the date of the Sixth Report, the Applicant, with the assistance of the Monitor, has maintained operations in the normal course of business. The Applicant continues to provide engineering services and sell chipsets to its customers, while

        developing increasingly advanced technology, which will have use in the 60 GHz and 5G spaces, among others.

18. As described in previous reports of the Monitor, Peraso has been engaged in certain litigation (the "**Ubiquiti Litigation**") with Ubiquiti Inc. ("**Ubiquiti**"). Despite the Ubiquiti Litigation, Ubiquiti has continued to purchase "X" series chipsets, which makes up the vast majority of Peraso chipset sales at this time. The Monitor is advised by the Company that, subject to a positive outcome of the Ubiquiti Litigation or resolution of the same through a settlement as discussed below, the Company anticipates a diversification in its chipset customer base through the end of the year.

19. The Applicant filed a motion for a determination of whether the License Agreement was validly terminated by Peraso (the "**Determination Motion**"), a key issue in the Ubiquiti Litigation. On August 28, 2020 at a case conference with Justice Hainey, it was determined the two-day hearing would proceed as scheduled on September 1 and 2, 2020. On September 1, on the basis that the parties were close to finalizing a settlement of the matters at issue, Ubiquiti and Peraso jointly requested an adjournment of the September 1 and 2, 2020 hearing of the Determination Motion. The hearing was rescheduled to be heard by this Court over three days, starting on October 26, 2020.

20. On September 2, 2020 Peraso and Ubiquiti agreed to a non-binding settlement term sheet (the "**Settlement Term Sheet**") with respect to the Ubiquiti Litigation and commercial terms relating to the granting of certain manufacturing rights. The Settlement Term Sheet included agreement on the consideration to be paid to Peraso and other key terms.

21. Since the date of the Sixth Report, the Applicant and Ubiquiti, with the assistance of the Monitor, have been engaged in discussions to finalize a settlement of the Ubiquiti Litigation. While extensive discussions have taken place with the Monitor's assistance and involvement, and Ubiquiti and Peraso believe they are close to finalizing a settlement agreement, no agreement has been reached as of the

5

date of this Report. The Monitor understands that the Applicant and Ubiquiti have reached an agreement as to the major issues between themselves; however, discussions with certain third parties whose consents are required to enter into and implement the settlement remain ongoing.

**ACTUAL RECEIPTS AND DISBURSEMENTS**

22. A summary of the Applicant's actual receipts and disbursements during the Reporting Period as compared to the Cash Flow Forecast set out in Exhibit D to the September 2 Glibbery Affidavit (as defined in the Sixth Report) is set out in Appendix "**A**" to this Eighth Report.

23. The Applicant's actual combined net cash inflow was approximately ▓▓▓ for the Reporting Period, which is approximately ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓, as detailed in Appendix A.

24. As at September 18, 2020, the Applicant had available cash of approximately ▓▓▓▓▓▓▓.

**UPDATED CASH FLOW FORECAST**

25. The Applicant, with the assistance of the Monitor, has prepared the Cash Flow Forecast for the six (6) week period from September 19, 2020 to October 30, 2020 (the "**Cash Flow Period**") for the purpose of projecting the Applicant's estimated liquidity needs during the Cash Flow Period. A copy of the Cash Flow Forecast is attached as Exhibit D to the October 1 Glibbery Affidavit.

26. The Cash Flow Forecast has been prepared by the Applicant using probable and hypothetical assumptions set out in the notes to the Cash Flow Forecast. The Cash Flow Forecast reflects Management's estimates of receipts and disbursements on a weekly basis over the six (6) week Cash Flow Period.

27. The cash position of the Applicant as at August 19, 2020 was approximately ▓▓▓ ▓▓▓. The cost of the CCAA proceeding will be paid from the Applicant's

6

available cash. The Applicant's Cash Flow Forecast estimates that during the Cash Flow Period, the Applicant will collect receipts of approximately ███████ and will incur projected estimated disbursements of approximately ███████. The Cash Flow Forecast projects that the Applicant will have sufficient liquidity during the proposed Stay Period based on its existing cash resources.

28. 

29. The Applicant is seeking an extension of the stay of proceedings until October 30, 2020, which extension will be used to attempt to finalize and implement a settlement with Ubiquiti. The Applicant also intends to use the extension of the Stay Period to explore its options for the overall resolution and conclusion of its CCAA proceedings.

30. 

7

██████████████████████████████████████████████

██████████████████████████

31. The Monitor's review of the Cash Flow Forecast consisted of inquiries, analytical procedures and discussions related to Information supplied to it by certain key members of Management. Since the probable and hypothetical assumptions need not be supported, the Monitor's procedures with respect to them were limited to evaluating whether they were consistent with the purpose of the Cash Flow Forecast. The Monitor also reviewed the support provided by Management for the probable and hypothetical assumptions, and the preparation and presentation of the Cash Flow Forecast.

32. Based on the Monitor's review, nothing has come to its attention that causes it to believe that, in all material respects:

    a) the probable and hypothetical assumptions are not consistent with the purpose of the Cash Flow Forecast;

    b) as at the date of this Report, the probable and hypothetical assumptions developed by Management are not suitably supported and consistent with the restructuring plans of the Applicant or do not provide a reasonable basis for the Cash Flow Forecast; or

    c) the Cash Flow Forecast does not reflect the probable and hypothetical assumptions.

33. As described in the Terms of Reference above, since the Cash Flow Forecast is based on assumptions regarding future events, actual results will vary from the information presented even if the probable and hypothetical assumptions occur, and the variations may be material. Accordingly, the Monitor expresses no assurance as to whether the Cash Flow Forecast will be achieved. In addition, the Monitor expresses no opinion or other form of assurance with respect to the accuracy of financial information presented in the Cash Flow Forecast or relied upon by the Monitor in preparing this Report.

34. The Cash Flow Forecast has been prepared solely for the purpose described above, and readers are cautioned that it may not be appropriate for other purposes.

**SEALING ORDER**

35. The Applicant is requesting that the Confidential Documents be filed with the Court on a confidential basis and remain sealed pending further order of the Court.

36. The Monitor supports the Applicant's request. The Confidential Documents contain commercially sensitive information, including details related to the Applicant's current liquidity that could, if publicly disclosed, be detrimental to the Applicant. The Confidential Documents also contain financial information related to the ongoing Ubiquiti Litigation, and the Monitor does not believe that making that information publicly available would be appropriate in the circumstances. The Monitor also does not believe that any stakeholder will be prejudiced if the documents are sealed.

**EXTENSION OF THE STAY PERIOD**

37. Pursuant to the Initial Order, the Stay Period is currently set to expire on October 2, 2020. The Applicant is currently requesting an extension of the Stay Period to October 30, 2020. During this period, the Applicant intends to finalize and obtain Court approval of a settlement with Ubiquiti and begin exploring its options for an overall resolution of the CCAA proceeding.

38. If, by the end of the day on October 7, 2020 at the latest, the Applicant has not reached a full and final settlement agreement with Ubiquiti, including the necessary agreements with third parties, the Monitor understands that the Applicant intends to commence an expedited sale process, which it intends to complete during the proposed Stay Period.

39. ██████████████████████████████████████████████

███████████████████████████████████████
████████████████████████

40. Accordingly, the Applicant intends to return to Court late next week or the week of October 12, 2020. At that hearing, the Applicant will either: (i) seek approval of a full and final settlement with Ubiquiti, if such an agreement has been concluded; or (ii) seek approval of a sale process.

41. █████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
████████████████████████████

42. █████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████

43. The Monitor is of the view that an extension of the Stay Period is appropriate for the following reasons, among others:

   a) Management and Ubiquiti have worked diligently to reach a settlement of the Ubiquiti Litigation and are committed to taking all steps necessary to finalize a settlement, which would be in the best interests of the Applicant's stakeholders; and

   b) the Applicant continues to operate in good faith and with due diligence since the date of the Initial Order.

10

**RECOMMENDATION**

44. For the reasons stated herein, the Monitor supports the relief sought by the Applicant.

All of which is respectfully submitted this 1st day of October, 2020.

**ERNST & YOUNG INC.**
**Solely in its capacity as the Monitor of**
**Peraso Technologies Inc. and not**
**in its personal capacity**

Per:

*[signature]*

Brian M. Denega, CPA, CA, LIT, CIRP
Senior Vice President

11

Confidential Appendix "**A**"

To the Eighth Report of the Monitor

Dated October 1, 2020

## TO BE SEALED

**FROM PUBLIC RECORD PENDING FURTHER ORDER OF THE COURT**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PERASO TECHNOLOGIES INC.**

Court File No.  CV-20-00642010-00CL

|  |  |
|---|---|
|  | *ONTARIO*<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>Proceedings commenced at Toronto |
|  | **EIGHTH REPORT OF THE MONITOR ERNST & YOUNG INC.** |
|  | **Thornton Grout Finnigan LLP**<br>3200 – 100 Wellington Street West<br>TD West Tower, Toronto-Dominion Centre<br>Toronto, ON   M5K 1K7<br><br>**D.J. Miller** (LSO# 34393P)<br>Email: djmiller@tgf.ca<br><br>**Andrew Hanrahan** (LSO# 78003K)<br>Email: ahanrahan@tgf.ca<br><br>Tel:    416-304-1616<br>Fax:    416-304-1313<br><br>Lawyers for the Monitor, Ernst & Young Inc. |