Ken Coleman
Josh Neifeld
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone:   (212) 610-6300
Facsimile:   (212) 610-6399

*Counsel to Ernst & Young Inc., as the Monitor
and Foreign Representative of Peraso Technologies Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* <br><br> PERASO TECHNOLOGIES INC.,[1] <br><br> Debtor in a Foreign Proceeding. | Chapter 15 <br><br> Case No. 20-11354 (SHL) |

**NOTICE OF FILING OF THE NINTH REPORT
OF THE MONITOR IN THE CANADIAN PROCEEDING**

**PLEASE TAKE NOTICE** that Ernst & Young Inc. is the court-appointed monitor (the "**Monitor**") and authorized foreign representative of Peraso Technologies Inc. ("**Peraso**") in a proceeding (the "**Canadian Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, (as amended, the "**CCAA**"), pending before the Ontario Superior Court of Justice, Commercial List (the "**Ontario Court**").

**PLEASE TAKE FURTHER NOTICE** that on October 13, 2020, the Monitor served the *Ninth Report of the Monitor* in the Canadian Proceeding, a copy of which is annexed hereto as Exhibit A, providing the Ontario Court with information regarding Peraso's request that a settlement agreement with Ubiquiti Inc. be approved by the Ontario Court.

*[Remainder of Page Intentionally Left Blank]*

---

[1]   The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, for Peraso Technologies Inc. are 8747.

| | |
|---|---|
| Dated: New York, New York<br>October 13, 2020 | **ALLEN & OVERY LLP**<br><br>*/s/ Ken Coleman*<br>Ken Coleman<br>Josh Neifeld<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone (212) 610-6300<br>Facsimile (212) 610-6399<br>ken.coleman@allenovery.com<br>josh.neifeld@allenovery.com<br><br>*Counsel to Ernst & Young Inc., as the Monitor and Foreign Representative of Peraso Technologies Inc.* |

# **EXHIBIT A**

*Ninth Report of the Monitor*

3

**Court File No.: CV-20-00642010-00CL**

# ONTARIO

# SUPERIOR COURT OF JUSTICE

# (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF PERASO TECHNOLOGIES INC.**

Applicant

# NINTH REPORT OF THE MONITOR

October 13, 2020

**Thornton Grout Finnigan LLP**
3200 – 100 Wellington Street West
TD West Tower, Toronto-Dominion Centre
Toronto, ON M5K 1K7

**D.J. Miller** (LSO# 34393P)
Email: djmiller@tgf.ca

**Andrew Hanrahan** (LSO# 78003K)
Email: ahanrahan@tgf.ca

Tel:   416-304-1616
Fax:   416-304-1313

Lawyers for the Monitor, Ernst & Young Inc.

**Court File No.: CV-20-00642010-00CL**

# ONTARIO

## SUPERIOR COURT OF JUSTICE

### (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF PERASO TECHNOLOGIES INC.**

Applicant

## NINTH REPORT OF THE MONITOR

**INTRODUCTION**

1. On June 3, 2020, Peraso Technologies Inc. ("**Peraso**", the "**Company**" or the "**Applicant**") applied for and was granted protection from the Ontario Superior Court of Justice (Commercial List) (the "**Court**") under the *Companies' Creditors Arrangement Act* R.S.C. 1985, c. C-36, as amended ("**CCAA**"), pursuant to an Order of Mr. Justice Hainey dated June 3, 2020 (the "**Initial Order**"). Ernst & Young Inc. ("**EY**" or the "**Monitor**") was appointed Monitor of the Applicant in this CCAA proceeding. The Initial Order provided a stay of proceedings until June 13, 2020 (the "**Stay Period**") with respect to the Applicant and certain current and former directors of the Applicant.

2. On June 12, 2020, the Court heard a motion brought by the Applicant and, among other things, amended and restated the Initial Order (the "**Amended and Restated Initial Order**") and extended the Stay Period to July 3, 2020.

3. On July 2, 2020, the Court heard a motion brought by the Applicant and approved a debtor-in-possession credit agreement and extended the Stay Period to August 14, 2020.

1

4. On August 11, 2020, the Court heard a motion brought by the Applicant and, among other things, extended the Stay Period to August 28, 2020. On August 28, 2020, the Court heard a motion brought by the Applicant and, among other things, extended the Stay Period to September 4, 2020.

5. On September 2, 2020, the Court heard a motion brought by the Applicant and approved an additional debtor-in-possession credit agreement and further extended the Stay Period to October 2, 2020.

6. On October 2, 2020, the Court heard a motion brought by the Applicant and further extended the Stay Period to October 30, 2020.

**PURPOSE**

7. The purpose of this ninth report of the Monitor (the "**Ninth Report**") is to provide information to this Court about:

    a) the Applicant's request that the Settlement Agreement (as defined below) be approved by the Court.

**TERMS OF REFERENCE**

8. Capitalized terms used but not defined in this Ninth Report are defined in the Affidavit of Ronald Glibbery affirmed in connection with the Company's motion (the "**October 9 Glibbery Affidavit**").

9. In preparing this Ninth Report and making the comments herein, the Monitor has been provided with, and has relied upon, unaudited financial information, books, records and financial information prepared by the Applicant, discussions with management of the Applicant ("**Management**"), and information from other third party sources (collectively, the "**Information**").

10. Unless otherwise indicated, the Monitor's understanding of factual matters expressed in this Report concerning the Applicant and its business is based on the Information, and not independent factual determinations made by the Monitor.

2

11. Unless otherwise stated, all monetary amounts contained herein are expressed in United States dollars.

12. This Ninth Report should be read in conjunction with the October 9 Glibbery Affidavit for additional background with respect to the Applicant.

**LITIGATION SETTLEMENT**

13. As described in previous reports of the Monitor, at the time these CCAA Proceedings were commenced, Peraso had been engaged in certain litigation (the "**Ubiquiti Litigation**") with Ubiquiti Inc. ("**Ubiquiti**") in Ontario and the Southern District of New York since early 2020.

14. The Applicant filed a motion within these CCAA Proceedings for a determination of whether the License Agreement was validly terminated by Peraso (the "**Determination Motion**"), a key issue in the Ubiquiti Litigation. The Determination Motion was scheduled for a two-day hearing on September 1 and 2, 2020. On September 1, on the basis that the parties were close to finalizing a settlement of the matters at issue, Ubiquiti and Peraso jointly requested an adjournment of the September 1 and 2, 2020 hearing. The hearing was rescheduled to be heard by this Court over three days, starting on October 26, 2020.

15. Despite the ongoing Ubiquiti Litigation, Ubiquiti has continued to purchase "X" series chipsets, which makes up the vast majority of Peraso chipset sales at this time. The Monitor is advised by the Company that, subject to a positive outcome of the Ubiquiti Litigation or resolution of the same through a settlement as discussed below, the Company anticipates a diversification in its chipset customer base through the end of the year.

16. As described in previous reports of the Monitor, the Applicant and Ubiquiti have been discussing a potential consensual resolution of the Ubiquiti Litigation since the commencement of the CCAA Proceedings. The Monitor has been regularly involved in those discussions and has assisted the parties as necessary or required.

3

17. Substantive settlement discussions between the Applicant and Ubiquiti (together, the "**Settlement Parties**") began shortly after the commencement of these CCAA Proceedings when, on July 6 and 7, 2020, the Settlement Parties engaged in mediation with former Associate Chief Justice of Ontario Dennis O'Connor acting as mediator (the "**July Mediation**").

18. The July Mediation concluded without a consensual resolution to the Ubiquiti Litigation. However, discussions between the parties continued throughout July and August 2020, encouraged and facilitated by the Monitor.

19. On September 2, 2020, Peraso and Ubiquiti agreed to a non-binding settlement term sheet (the "**Settlement Term Sheet**") with respect to the Ubiquiti Litigation and commercial terms relating to the granting of certain manufacturing rights. The Settlement Term Sheet included agreement on the consideration to be paid to Peraso and other key terms. Those discussions also resulted in an affiliate of Ubiquiti advancing to the Applicant certain interim financing on September 2, 2020 (the "**Ubiquiti DIP**"), as discussed in the Sixth Report of the Monitor, dated September 2, 2020 (the "**Sixth Report**").

20. As described in more detail in the October 9 Glibbery Affidavit, since signing the Settlement Term Sheet, Peraso and Ubiquiti have been working diligently with the assistance of the Monitor to reach a binding settlement of the Ubiquiti Litigation. The Monitor has been significantly involved in all aspects of those discussions and has assisted the parties throughout to reach a resolution.

21. These complex discussions and negotiations have been ongoing during September and October 2020 and, following extensive and detailed negotiations, on October 9, 2020 a final agreement was reached, subject to Court approval (the "**Settlement Agreement**").

22. The Settlement Agreement is generally consistent with the Settlement Term Sheet and is described in greater detail in the October 9 Glibbery Affidavit. However the salient details are as follows.

4

23. Pursuant to the Settlement Agreement, the Applicant will grant certain license and manufacturing rights to Ubiquiti and its affiliates in connection with certain intellectual property and will permit Ubiquiti to have certain Peraso components manufactured for Ubiquiti products. In exchange, Ubiquiti will provide certain payments to the Applicant: (i) a one time $5 million payment, which payment is partially offset by the Ubiquiti DIP; and (ii) future royalty payments in amounts as contemplated by the Settlement Agreement and its Schedules (collectively, the "**Settlement Payments**").

24. The Settlement Agreement contemplates a number of other agreements to effectuate the terms of the settlement. All of these additional agreements are to be executed by the Applicant and Ubiquiti and (with the exception of the Escrow Agreement) held in escrow by the Monitor until the Conditions Precedent (as defined below) have been satisfied, at which time they will be released from escrow by the Monitor. These additional agreements, which are attached as Schedules to the Settlement Agreement, are:

   a) a Licence and Manufacturing Agreement (the "**LMA**") between the Applicant and Ubiquiti, which replaces the existing Licence and Development Agreement. The LMA establishes Peraso and Ubiquiti's business relationship going forward. Pursuant to the LMA, the Applicant will provide to Ubiquiti a license to use certain of the Applicant's intellectual property on specified terms. The LMA further provides that Ubiquiti will have the right to manufacture certain Peraso products. In exchange, Ubiquiti will make the Settlement Payments as described above;

   b) an agreement (the "**Escrow Agreement**") between the Applicant, Ubiquiti, and Praxis Technology Escrow (the "**Escrow Agent**"). Pursuant to the Escrow Agreement, Peraso will deposit certain defined intellectual property into an account with the Escrow Agent to permit Ubiquiti to access it for purposes of the manufacturing rights that Peraso has granted to Ubiquiti in the LMA. The Escrow Agreement provides that, upon the Monitor

5

   providing notice to the Escrow Agent of the satisfaction of the Conditions Precedent (as defined below), the materials held in escrow may be released and provided to Ubiquiti;

c)  a number of Step-in Rights Authorizations, which are letters or agreements under which Peraso directs certain of its third-party manufacturers to permit Ubiquiti to order specific Peraso components from those manufacturers;

d)  a Shareholders' Consent, pursuant to which the Applicant will make amendments to its Ninth Amended and Restated Unanimous Shareholders' Agreement to ensure that it is consistent with the terms of the Settlement Agreement and its Schedules; and

e)  a full and final mutual release (the "**Release**") among the Applicant and the other defendants involved in the Ubiquiti Litigation (collectively, the "**Defendant Parties**"), Ubiquiti, Ubiquiti Networks Canada Inc. (together with Ubiquiti, the "**Ubiquiti Parties**"), and their respective Related Parties (as defined in the Release). The Release releases all Claims (as defined in the Release) that the Ubiquiti Parties, on the one hand, and the Defendant Parties, on the other hand, have had or may now have against the other or any Related Parties by reason of any matter relating to Peraso and its business and operations that was raised in the Existing Litigation (as defined in the Settlement Agreement) or that could have been raised in the Existing Litigation based on facts known by such party as of October 9, 2020. The Release explicitly excludes any claims

  i.  arising under the Settlement Agreement, the LMA or any of the documents executed by the Settlement Parties in connection therewith;

  ii.  for amounts presently owing to Peraso under the master purchase and supply agreement dated December 21, 2018 (the "**Supply Agreement**") between Peraso and Ubiquiti Cayman Limited, for

6

    purchase orders, subject to the provisions of the Settlement Agreement; and

  iii. under the Supply Agreement arising from or relating to any Peraso products sold and delivered to Ubiquiti or its affiliates, subject to any limitations provided in the Supply Agreement, and provided further that Ubiquiti and its related parties represent and warrant that they are not aware of any claims under the Supply Agreement existing as of the date of the release.

25. The Settlement Agreement provides that, upon the satisfaction of the Conditions Precedent and the settlement becoming effective, the Settlement Parties will take steps to seek the dismissal of the Ubiquiti Litigation, and the Settlement Parties will take no further action in advance of the hearing on the Determination Motion, which will be withdrawn. The form of Stipulation dismissing the Ubiquiti Litigation is attached as a Schedule to the Settlement Agreement.

26. The Settlement Agreement is conditional upon the following conditions (collectively, the "**Conditions Precedent**"):

 a) receipt by the Settlement Parties and the Monitor of a Deposit Material Evaluation from the Escrow Agent confirming that all of the materials required by the LMA to be placed into escrow pursuant to the Escrow Agreement, have been delivered to the Escrow Agent pursuant to the Escrow Agreement;

 b) this Court entering an order:

  i. approving the Settlement Agreement and the transactions contemplated therein; and

  ii. declaring that the LMA, along with its schedules, exhibits, appendices, and all contracts contemplated thereby, is an agreement to which sections 32(6) and 36(8) of the CCAA (and the similar

7

        provisions of the *Bankruptcy and Insolvency Act*) apply, notwithstanding any current or future insolvency proceedings involving Peraso or any future sale of Peraso's business or intellectual property in accordance with those statutory provisions.

    c)    delivery by the Applicant to the Monitor of a fully-executed Full and Final Mutual Release including a signature from each party identified therein, with instructions to the Monitor to hold such signature pages in escrow pursuant to the terms of the Settlement Agreement;

    d)    delivery by the Applicant to the Monitor of a fully-executed Shareholders' Consent, including a signature from each party identified therein, with instructions to the Monitor to hold such signature pages in escrow pursuant to the terms of the Settlement Agreement, together with a copy of the directors' resolution of Peraso authorizing and approving the amendments contemplated by the Shareholders' Consent; and

    e)    execution and delivery of a Step-in Rights Authorization from a third-party (the Settlement Parties expect this condition to be satisfied prior to the hearing of this motion).

27.    Upon the satisfaction of the Conditions Precedent, the Monitor will release the various agreements from escrow and Ubiquiti will pay to the Applicant the balance of the $5 million (after setting off the amounts outstanding under the Ubiquiti DIP).

28.    If the Conditions Precedent are not satisfied on or before October 20, 2020 (the "**Outside Date**") or such later date as the Settlement Parties may agree in writing, the settlement is terminated and the Determination Motion shall proceed on October 26 to 28, 2020.

**ANALYSIS AND RECOMMENDATION**

29.    The Monitor believes that the Settlement Agreement, which is the result of intense arms-length negotiations between the Settlement Parties, is fair and reasonable and

provides Peraso with the best available opportunity to successfully restructure its business.

30. As noted in prior reports of the Monitor, the Ubiquiti Litigation has been the central issue in these CCAA Proceedings. By reaching this resolution, the Applicant has eliminated a significant obstacle to its successful restructuring. The Settlement Agreement allows the Applicant to bring an end to the ongoing cash expenditure and the uncertainty created by the Ubiquiti Litigation, and pursue a restructured business relationship with its largest customer Ubiquiti.

31. The Settlement Agreement should also allow the Applicant to pursue a refinancing of the unburdened entity, free from the implications of the ongoing Ubiquiti Litigation. Further, the Settlement Agreement will provide the Applicant with additional liquidity to continue and maintain the company as a going-concern business, while preserving the company's workforce and maintaining relationships with customers and suppliers.

32. The Monitor agrees with the Applicant's assessment that the Settlement Agreement is a better option for the Applicant than a continuation of the Ubiquiti Litigation. Continuing to litigate the Ubiquiti Litigation would be both time consuming and costly and, as described in previous reports of the Monitor, Peraso has very limited liquidity. All litigation carries risks, and there is no certainty of success for either party. This settlement will allow Peraso to continue operating as a going concern and continue on its path toward a successful restructuring which will maximize value for all stakeholders.

33. The Monitor understands that absent additional funding, a settlement and/or a pending sale, Peraso may be required to curtail its ongoing research and development and/or ability to operate as a going concern. Furthermore, if the Conditions Precedent cannot be satisfied by the Outside Date and the settlement is terminated, the Monitor understands there may be insufficient liquidity available at that time for the Applicant to initiate a going concern sale process, and would be required to undertake an expedited liquidation sale process. The Monitor will

provide the Court with an update if at any point it appears that the Applicant will not have sufficient liquidity to continue to fund its operations throughout the entirety of the Stay Period.

34. The Monitor understands that the Company has consulted with Roadmap (as defined the Affidavit of Ronald Glibbery, affirmed June 25, 2020), the Company's largest shareholder and current interim lender (along with Ubiquiti) and they do not object to the proposed settlement.

35. For the reasons stated herein, the Monitor supports the relief sought by the Applicant.

All of which is respectfully submitted this 13th day of October, 2020.

**ERNST & YOUNG INC.**
**Solely in its capacity as the Monitor of**
**Peraso Technologies Inc. and not**
**in its personal capacity**

Per:

*[signature]*

Brian M. Denega, CPA, CA, LIT, CIRP
Senior Vice President

10

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **PERASO TECHNOLOGIES INC.**

Court File No.  CV-20-00642010-00CL

|  |  |
|---|---|
|  | *ONTARIO* <br> **SUPERIOR COURT OF JUSTICE** <br> **(COMMERCIAL LIST)** <br><br> Proceedings commenced at Toronto |
|  | **NINTH REPORT OF THE MONITOR ERNST & YOUNG INC.** |
|  | **Thornton Grout Finnigan LLP** <br> 3200 – 100 Wellington Street West <br> TD West Tower, Toronto-Dominion Centre <br> Toronto, ON   M5K 1K7 <br><br> **D.J. Miller** (LSO# 34393P) <br> Email: djmiller@tgf.ca <br><br> **Andrew Hanrahan** (LSO# 78003K) <br> Email: ahanrahan@tgf.ca <br><br> Tel:    416-304-1616 <br> Fax:    416-304-1313 <br><br> Lawyers for the Monitor, Ernst & Young Inc. |